IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

JAMES E. HOUCK, #421-024            *

    Plaintiff,                              *

v.                                                          Civil Action No. GJH-16-2123
                                              *

WESTERN CORRECTIONAL
INSTITUTION, *et al.*,
                                              *

    Defendants.
                                               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff James E. Houck is an inmate at the Western Correctional Institution ("WCI") where he is on protective custody status. In his Complaint, Houck claims that he was improperly celled with another inmate who asked him to have sex, harassed him, and placed him in fear of his life. ECF No. 1 at 3.[1] The Court ordered an expedited response to Houck's Complaint. ECF No. 3. Counsel for the Office of the Attorney General of Maryland filed a Response, ECF No. 5, which the Court will construe as a Motion for Summary Judgment. ECF No. 10. Houck filed a Response on September 1, 2016. ECF No. 12.

Houck has also filed Motions to File a Lawsuit, ECF No. 4, for a Temporary Restraining Order, ECF No. 9, and for Summary Judgment, ECF No. 13. The matter is ready for disposition. The Court finds that a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2016). For reasons to follow, the State's Response, construed as a Motion for Summary Judgment, ECF No. 10, is granted. Houck's Motion to File a Lawsuit, ECF No. 4, is granted. Houck's Motion for a

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Temporary Restraining Order, ECF No. 9, and Motion for Summary Judgment, ECF No. 13, are denied with prejudice.

I.   BACKGROUND

A. Houck's Allegations

Houck alleges that he is supposed to be assigned to protective custody status and single celled, but that he was assigned a cellmate who sexually harassed him and placed him in fear of his life. ECF No. 1 at 3.[2] Houck states his cellmate asked him for sex on June 2, 2016, but Houck refused. Houck also claims there is a "hit" on him. *Id.* He states he filed a claim pursuant to "PREA"[3] on June 3, 2016. *Id.* As relief, he seeks transfer to another correctional facility, placement in protective housing, assignment to single cell status, and $200,000 in damages. *Id.*

On July 25, 2016, Houck filed a pleading styled as an "Order" and a "Motion to File for a Lawsuit" in which he repeats claims he is in danger and requests single cell status or transfer to another facility. ECF No. 4 at 1–2. Houck alleges corrections officials have "breach[ed]" statements made to this Court that he would remain on single cell status. *Id.* at 1.[4] The cellmate said Houck was "hot" and solicited him to have sex. *Id.* Houck asserts he is frightened that he will be killed and wants to be transferred to another facility and remain on protective custody status. *Id.* at 2.

---

[2] With his Complaint, Houck filed a copy of a status report filed by counsel in the Office of the Attorney General in *Houck v. Warden*, GJH-15-3639 (D. Md. 2015), which states that as of June 10, 2016, Houck was housed on protective custody status at WCI and in a single cell. ECF No. 1 at 1. The report indicates Houck would remain on this status until investigation of his safety concerns was completed and his housing arrangement would be consistent with all necessary safety precautions. *Id.* at 2. The case was dismissed on December 12, 2016. The Court ordered the status report in an abundance of caution after noting that Houck's previous claims of imminent danger due were investigated and found unsubstantiated in *Houck v Department of Public Safety and Correctional Services*, GLH-15-1883 (D. Md. November 30, 2015).

[3] The Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, *et seq.*

[4] Houck appears to refer to the status report filed in *Houck v. Warden*, GJH-15-3639, *supra*. n. 1.

On August 10, 2016, Houck filed a Motion for a Temporary Restraining Order, asking this Court to order him assigned to single cell status and to transfer him to another correctional facility. ECF No. 9 at 1, 2. He offers to settle his claim for $500.00 or $1,000.00. *Id.* Houck reiterates his claim that on May 16, 2016, he was assigned a cellmate and the cellmate sexually harassed him. *Id.* at 1. Houck claims he fears for his safety. *Id.* at 1.

### B. State's Response

The Response is supported with verified records and a declaration executed on July 15, 2016, by James A. Wilson ("Wilson"), case management supervisor at WCI, in which he attests Houck was assigned to protective custody ("PC") status on April 8, 2015. ECF No. 5-1 at 1–2. At the time of his placement on PC at WCI, single cell housing was deemed unnecessary for Houck. *Id.* at 2. Before arriving at WCI, Houck had been housed in a single cell pending sentencing. *Id.*

Wilson attests Houck has been housed on PC with cellmate Joey Poindexter since May 16, 2016 without incident. *Id.* at 1–2. Before they were housed together, both inmates' "enemy lists" were reviewed to ensure they were not documented enemies. ECF No. 5-1 ¶ 3. Wilson attests Houck did not file an Administrative Remedy Procedure request (ARP) concerning the matters alleged in the Complaint or inform correctional staff of his safety concerns. *Id.* Wilson states Houck's case will continue to be closely monitored. *Id.* Further, the record indicates that on March 7, 2016, Houck asked to be taken off administrative segregation because he does not fear for his safety while on protective custody status. ECF No. 5 at 2. Wilson states Houck's safety will continue to be carefully monitored. *Id.*

On August 16, 2016, the Court issued an Order construing the Response as a Motion for Summary Judgment and granted Houck twenty-one days to reply. ECF No. 10. On August 26,

2016, Houck filed a copy of an ARP, WCI-15-1525-16, dated July 13, 2016. ECF No. 11. In the ARP, Houck raised the same allegations presented in his Complaint: he is supposed to be in a single cell on the protective custody unit, but on May 16, 2016, another inmate was placed in the cell with him, who sexually harassed and tried to kill him. ECF No. 11 at 1. The ARP was dismissed on July 14, 2016, pending resubmission on July 29, 2016, because additional information was needed to investigate the ARP. *Id.* Houck was instructed to state how he was being harassed by his cell partner and to provide dates of the incidents. *Id.* Houck does not indicate whether he resubmitted the ARP as instructed.

## II.   ANALYSIS

### A. Emergency Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). To meet the first requirement for a preliminary injunction, a movant must "clearly demonstrate" that the party "will likely succeed on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth*, 575 F.3d at 346–47. To succeed on his Motion for a Preliminary Injunction, a movant must show that the irreparable harm faced in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, substantial deference is to be given to the judgment of

prison administrators. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This deference is at its greatest when prison order is at stake. *See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 2003). Courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The Court recognizes that functions of prison management and security must be left to the broad discretion of prison administrators to enable safe and effective management. *See, e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

Houck's claim is that he was assigned a cellmate on May 16, 2016, who sexually harassed him and placed him in fear of his life. Houck's only specific allegation, however, is that the cellmate called him "hot" and asked him for sex. He provides no further details of the alleged harassment or when the incidents occurred. Moreover, he has not furnished any facts or evidence to this Court or to prison officials to establish that he has suffered physical harm or there is a pending or planned action to cause him injury. Against this background, the Court takes notice of the State's verified records that demonstrate that Houck is assigned to protective custody, single cell placement has been considered and deemed unnecessary for him, he has been housed with his cellmate without incident, and Houck's safety will continue to be monitored. ECF No. 5-1 at 1–2. Houck's housing and safety concerns call into question administrative decisions about inmate and institutional security, matters to which the expertise of prison administrators are accorded deference. For these reasons, the Court finds that Houck fails to satisfy the requisites for preliminary injunctive relief, and the Motion is denied.

### B. Houck's Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

The Eighth Amendment imposes a duty on prison authorities to protect inmates from violence from other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Being violently assaulted in prison is "not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981)). To bring a failure to protect claim, an inmate must first show that officials failed to protect him from harm and the harm he suffered was objectively serious, and second that prison officials acted with "deliberate indifference." *Farmer*, 511 U.S. at 834.

Houck's Motion for Summary Judgment reiterates his claims and is supported with: 1) his housing record dated November 9, 2015, assigning him to a single cell, ECF No. 13-1; 2) a letter from Patricia Vale, Regional Executive Director for the Department of Public Safety and Correctional Services (DPSCS) dated December 16, 2014, stating that he would remain on single cell and administrative status at the Jessup Correctional Institution, ECF No. 13-2; 3) a letter from DPSCS Commissioner Wayne A. Webb to Congressman Elijah Cummings, dated August 4, 2015, that states Houck is on protective custody status at WCI and that after Houck's safety concerns about his cellmate were investigated, it was determined that single cell status was unnecessary, ECF No. 13-3; 4) ARP WCI-1603, in which Houck complains that protective custody inmates are not receiving hot food every day, ECF No. 13-4; 5) a copy of the February 5, 2016, declaration of Tennille Winters, WCI case manager, submitted by counsel in *Houck v. Graham*, GJH-15-3639, in which Winters attests Houck was assigned at that time to PC housing and a single cell, ECF No. 13-5;[5] and 6) a copy of his Notification of Security Reclassification, ECF No. 13-6.

There is no constitutional guarantee regarding cell assignments. "In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing male inmates, even though such considerations result in disparate treatment based upon gender." *Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002). Additionally, this court is mindful that if plaintiff's allegation that he

---

[5] This declaration was submitted in *Houck v. Warden, et al.* GJH-15-3639 (D. Md. 2015).

has been threatened with harm by a cellmate becomes the sole criteria for single cell status, prison administrators will be susceptible to manipulation of housing needs by inmates.

Thus, even when the facts are viewed in the light most favorable to Houck, the Motion for Summary Judgment fails to raise any dispute of material fact as to whether he is at excessive risk of harm or that prison officials acted with deliberate indifference toward him in this regard. In fact, he has provided no specific details showing when the alleged assaults occurred, that he sustained injury, or how he has come to know that a "hit" has been placed on him. Accordingly, Houck's Motion for Summary Judgment will be denied.

### III.  CONCLUSION

For the reasons stated above, the State's Response, ECF No. 5, construed as a Motion for Summary Judgment will be granted. Houck's Motion to File a Lawsuit, ECF No. 4, will be granted. Houck's Motion for a Temporary Restraining Order, ECF No. 9, and Motion for Summary Judgment, ECF No. 13, will be denied. A separate Order shall follow this Memorandum Opinion.

2/2/2017
Date

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE